2014 COA 48

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Jason Lee LANE, Defendant–Appellant.**

**Court of Appeals No. 09CA1351**

Colorado Court of Appeals,
Div. VI.

Announced April 24, 2014

Rehearing Denied May 29, 2014

Arapahoe County District Court No. 06CR636, Honorable Gerald J. Rafferty, Judge, Honorable Carlos A. Samour, Jr., Judge.

John W. Suthers, Attorney General, Ryan A. Crane, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Ryann S. Hardman, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE GABRIEL

¶ 1 Defendant, Jason Lee Lane, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder. He also appeals the trial court's restitution order. We conclude that the trial court did not abuse its discretion in (1) rejecting Lane's tendered instruction regarding

deadly force and in instructing the jury regarding self-defense; (2) excluding certain expert and lay testimony regarding prior abuse that Lane had suffered; and (3) limiting the cross-examination of a prosecution witness. We further conclude that the court did not err in awarding restitution to all three of the victim's siblings. Accordingly, we affirm.

## I. Background

¶ 2 Lane met the victim at a bar in Denver. After consuming several drinks, Lane and the victim went to Lane's motel room in Aurora. There, Lane arranged for the victim to obtain some crack cocaine, and the victim and a neighbor of Lane's smoked the crack in Lane's room. Afterward, Lane permitted the victim to spend the night.

¶ 3 According to Lane, he awoke in the middle of the night to find the victim groping his chest and genitals over his clothing. In response, he stabbed the victim with a steak knife thirteen times in the chest, killing him. At trial, Lane asserted that he had acted in self-defense against a sexual assault and that he was too intoxicated to form the necessary intent to commit first degree murder.

¶ 4 The jury convicted Lane of second degree murder, and the trial court sentenced him to forty-five years in prison. The trial court also ordered Lane to pay restitution to all three of the victim's siblings.

¶ 5 Lane now appeals.

## II. Jury Instructions

¶ 6 Lane contends that the trial court erred in (1) rejecting his proffered jury instruction on the relationship between intoxication and the use of deadly force, and (2) giving the jury certain instructions pertaining to self-defense. We are not persuaded.

### A. Standard of Review

¶ 7 "We view jury instructions as a whole to determine whether the jury was adequately informed of the applicable law." *People v. Bondurant*, 2012 COA 50, ¶ 66, 296 P.3d 200, 213. If the jury is adequately instructed on the law, we will not disturb a trial court's ruling concerning a jury instruc-

tion absent a showing of an abuse of discretion. *Id.* at 296 P.3d at 213; *see also People v. Chavez*, 190 P.3d 760, 769 (Colo.App.2007) ("It is within the sound discretion of the district court to determine whether additional jury instructions which properly state the law should be submitted."). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Williams*, 2012 COA 165, ¶ 13, 297 P.3d 1011, 1014.

¶ 8 We review preserved, nonconstitutional trial errors for harmless error. *See* Crim. P. 52(a); *Hagos v. People*. 2012 CO 63, ¶ 12, 288 P.3d 116, 119. Under this standard, we will reverse only if the error affected the substantial rights of a party. *Hagos*, 288 P.3d at 119.

### B. Intoxication and Deadly Force Instruction

¶ 9 Lane argues that the trial court should have given the following instruction to the jury:

> The prosecution has the burden of proving all the elements of deadly physical force beyond a reasonable doubt. If you find the defendant was intoxicated to such a degree that he did not intend to cause the death of [the victim], which is a required element of Deadly Physical Force, you should apply the principles of ordinary physical force self-defense rather than the principles of deadly physical force self-defense.

¶ 10 We reject Lane's argument for the reasons stated in *People v. Vasquez*, 148 P.3d 326, 330 (Colo.App.2006) (opining that because the reasonable person standard requires a defendant to appraise the situation as would a reasonable sober person, evidence of voluntary intoxication is irrelevant to the issue of whether general, as opposed to deadly physical force, self-defense principles should apply).

### C. Reasonable Person Instruction

¶ 11 Lane further argues that the trial court erred in giving the following self-defense instruction:

The affirmative defense of use of physical force in defense of a person takes into account the actual belief or state of mind of the defendant. However, it ultimately requires that a reasonable person would have believed and acted as the defendant did under the circumstances. You must weigh all of the relevant circumstances to determine whether the defendant acted as a reasonable person would have acted in similar circumstances. The reasonable person standard requires a defendant to appraise the situation as would a reasonable sober person.

¶ 12 Specifically, Lane contends that the second sentence of this instruction, which was taken almost verbatim from *Vasquez*, 148 P.3d at 330, conveyed that although there may be a subjective component to self-defense, it bears no weight because the question is "ultimately" an objective one.

¶ 13 As our supreme court has made clear, a trial court's use of an excerpt from a judicial opinion in a jury instruction is generally an unwise practice because opinions and instructions serve very different purposes. *See, e.g., Evans v. People*, 706 P.2d 795, 800 (Colo.1985). Nonetheless, we perceive no reversible error here for the following reasons:

- Contrary to Lane's assertion that the instruction conveyed a message that is "simply not the law," the *Vasquez* division expressly stated that self-defense "ultimately requires that a reasonable person would have believed and acted as the defendant did." *See Vasquez*, 148 P.3d at 330.

- Contrary to Lane's assertion that the instruction may have misled the jury into ignoring the totality of the circumstances and his perceptions of the encounter, the instruction expressly told the jurors to *"weigh all of the* relevant circumstances to determine whether the defendant acted as a reasonable person would have acted in similar circumstances." (Emphasis added.)

- The applicable self-defense statute emphasizes the reasonableness of a defendant's use of self-defense. *See* § 18-1-704, C.R.S.2013 (using the words "reasonable" or "reasonably" six times but

referring to a defendant's actual or subjective belief only once); *see also People v. Rodriguez*, 888 P.2d 278, 286 (Colo. App.1994) ("The touchstone of self-defense is whether, from the standpoint of the defendant, his belief that danger was imminent is reasonable.").

- The trial court understood Lane's concern at trial and informed defense counsel, "[I]f you have a different way that you want me to draft [the instruction] or if there's a different way so as not to emphasize the objective standard so much over the subjectiveness or the subjective aspect of it, then, you know, I'm all ears." Lane's counsel, however, did not tender an alternative instruction or raise a further objection.

¶ 14 For these reasons, we reject Lane's contention that reversal is required on this issue.

### D. Self–Defense Burden of Proof Instruction

■ ¶ 15 Lane next argues that the trial court erred in instructing the jury that the prosecution did not bear the burden of disproving self-defense with respect to reckless manslaughter and criminally negligent homicide. In making this argument, Lane acknowledges that the instruction that the court gave was consistent with *People v. Pickering*, 276 P.3d 553 (Colo.2011). He asserts, however, that the United States Supreme Court's decision in *Smith v. United States*, — U.S. —, 133 S.Ct. 714, 184 L.Ed.2d 570 (2013), implicitly overruled *Pickering*. He thus contends that the instruction here misstated the law and violated his constitutional right to due process. We are not persuaded.

¶ 16 In *Pickering*, 276 P.3d at 555, the Colorado Supreme Court distinguished between two types of defenses in criminal cases: "(1) 'affirmative' defenses that admit the defendant's commission of the elements of the charged act, but seek to justify, excuse, or mitigate the commission of the act; and (2) 'traverses' that effectively refute the possibility that the defendant committed the charged act by negating an element of the

act." When a defendant presents evidence that raises the issue of an affirmative defense, the affirmative defense effectively becomes an additional element, and the trial court must instruct the jury that the prosecution bears the burden of proving beyond a reasonable doubt that the affirmative defense is inapplicable. *Id.* When a defendant presents evidence that raises the issue of an elemental traverse, however, no such instruction is required. *Id.* In *Pickering,* the court opined that self-defense is an affirmative defense to second degree murder but that it is a traverse to crimes requiring recklessness, criminal negligence, or extreme indifference, such as reckless manslaughter. *Id.* at 555–56. In light of these principles, the court held that the trial court had properly instructed the jury that the prosecution did not bear the burden of disproving self-defense with respect to the reckless manslaughter charge at issue. *Id.* at 557. The court further concluded that in so instructing the jury, the trial court did not improperly shift to the defendant the prosecution's burden to prove recklessness. *Id.*

¶ 17 In *Smith,* —— U.S. ——, 133 S.Ct. at 719, the United States Supreme Court held that the prosecution did not bear the burden of proving that a defendant failed to withdraw from a criminal conspiracy. The court reasoned that although the Constitution requires the prosecution to prove every element of a criminal charge beyond a reasonable doubt, proof of the nonexistence of all affirmative defenses has never been constitutionally required. *Id.* The court then observed that the prosecution is foreclosed from shifting the burden of proof to the defendant only " 'when an affirmative defense *does* negate an element of a crime.' " *Id.* (quoting *Martin v. Ohio,* 480 U.S. 228, 237, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (Powell, J., dissenting)). Thus, when a defense excuses conduct that would otherwise be punishable but does not controvert any of the elements of the offense itself, the prosecution has no constitutional duty to overcome the defense by proof beyond a reasonable doubt. *Id.*

¶ 18 In our view, *Smith* and *Pickering* addressed different issues. *Pickering* concerned whether a jury instruction shifted the burden of proving an *element of the offense* to a defendant. *See Pickering,* 276 P.3d at 555–56. *Smith,* in contrast, focused on the propriety of shifting the burden of proving a particular *affirmative defense* to a defendant. *Smith,* —— U.S. ——, 133 S.Ct. at 719.

¶ 19 For this reason, we conclude that *Smith* did not overrule *Pickering,* and, thus, the trial court did not err in relying on *Pickering* to instruct the jury that self-defense was not an affirmative defense to the lesser-included charges of manslaughter and criminally negligent homicide.

### III. Expert and Lay Testimony

¶ 20 Lane next contends that the trial court erred in excluding certain expert and lay testimony that he asserts was relevant to the question of his mental state during the commission of the crime at issue. Again, we are not persuaded.

### A. Standard of Review and Applicable Law

██ ¶ 21 We review a trial court's determination regarding the admissibility of evidence for an abuse of discretion. *People v. Beilke,* 232 P.3d 146, 149 (Colo.App.2009). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 22 Only relevant evidence is admissible. *See* CRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. A trial court may exclude otherwise relevant evidence, however, if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, or misleading the jury. CRE 403.

██ ¶ 23 In addition, lay witnesses may present opinions or inferences if those opinions or inferences are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, techni-

cal, or other specialized knowledge within the scope of [CRE 702]." CRE 701. CRE 702, in contrast, provides that expert witnesses qualified by "knowledge, skill, experience, training, or education" may present opinions regarding "scientific, technical, or other specialized knowledge." In distinguishing between lay and expert opinion testimony, we consider whether the opinion results from a process of reasoning familiar in everyday life or a process of reasoning that can be mastered only by specialists in the field. *People v. Rincon*, 140 P.3d 976, 983 (Colo.App.2005).

### B. Expert Testimony

¶ 24 Here, Lane sought to call an expert witness to testify generally about post-traumatic stress disorder (PTSD). This expert would not have examined Lane and would not have testified that Lane suffered from PTSD or that PTSD somehow related to the conduct at issue in this case. He simply would have "educated" the jury generally about PTSD.

¶ 25 The trial court concluded that this testimony would be inadmissible unless Lane first complied with section 16–8–107(3)(b), C.R.S.2013. This statute provides that a defendant shall not be permitted to introduce evidence in the nature of expert opinion concerning his or her mental condition without having first given notice to the court and the prosecution of his or her intent to introduce such evidence, and without having undergone a court-ordered examination pursuant to section 16–8–106, C.R.S.2013. Lane then elected not to call this expert at trial. We perceive no error in the court's ruling.

¶ 26 When a defendant seeks to admit expert testimony related to a mental condition, section 16–8–107(3)(b) requires the defendant to undergo a court-ordered examination. *People v. Wilburn*, 2012 CO 21, ¶ 23, 272 P.3d 1078, 1083. Our supreme court has noted that this statute is a "broad provision." *Id.* at 272 P.3d at 1084.

¶ 27 Here, although Lane contends that the statute is inapplicable because his expert was not going to opine specifically on his mental condition, Lane made clear that his intent was to introduce this evidence, along with lay testimony regarding prior abuse

committed against him, in order to allow the jury to find that he was suffering from PTSD at the time of the stabbing at issue. Thus, in our view, the proffered testimony was expert opinion concerning Lane's mental condition, even if it would not have addressed that condition directly. Indeed, if the evidence did not concern Lane's mental condition, then it would have been wholly irrelevant.

¶ 28 Accordingly, we conclude that the trial court did not err in finding that Lane's proffered expert testimony would have triggered the requirements of section 16–8–107(3)(b).

### C. Lay Testimony

¶ 29 Lane also sought to call several lay witnesses to testify regarding (1) physical and sexual abuse perpetrated against him when he was a young child and an adolescent, and (2) his reactions to certain life experiences since his victimization. Lane asserted that this testimony was relevant to the jury's determination as to whether he believed that he was being or was about to be sexually assaulted on the night in question, which was pertinent to his claim of self-defense.

¶ 30 In a thorough and well-reasoned order, the trial court excluded Lane's proffered evidence because (1) the evidence was "extremely remote," with the most recent alleged incident of abuse taking place approximately fifteen years before trial; (2) without expert testimony, the proffered evidence was irrelevant and inadmissible under CRE 401–403 because the witnesses could not say that the prior incidents impacted Lane's mental state when he stabbed the victim, but rather the proffered evidence would have required the jury to speculate as to the link between the prior incidents and the stabbing, which could have resulted in juror confusion; (3) it was unclear whether Lane even remembered all of the prior incidents of abuse, given that he was a very young child when several of the incidents occurred; and (4) the admission of the prior incidents could open the door to other evidence and would have risked turning the proceedings into a trial within a trial.

¶ 31 Lane asserts that the trial court erred in so ruling because (1) the lay witness testimony was relevant evidence of his actual belief relating to self-defense and was not substantially outweighed by the danger of unfair prejudice, and (2) the court's ruling "gutted" his ability to present lay opinion testimony of his mental state under CRE 701 and section 16–8–109, C.R.S.2013. For several reasons, we reject these contentions.

¶ 32 First, we cannot say that the trial court abused its discretion in ruling that the probative value of the lay witnesses' proposed testimony was substantially outweighed by the dangers of confusion of the issues or misleading the jury, or by considerations of undue delay or waste of time. *See* CRE 403. As the trial court found, the events were remote in time; the witnesses would not have tied the past events to the current incident, thereby creating a substantial risk of juror confusion; and the proffered evidence could have resulted in mini-trials concerning the prior incidents.

¶ 33 Second, the lay witnesses would not have been able to opine either that Lane's past trauma affected his reasonable belief concerning whether the victim *in this case* was going to assault him, or that the past trauma caused him to suffer PTSD and his actions in this case were the result of that condition. Such evidence would have required scientific, technical, or other specialized knowledge and, thus, would have been beyond the scope of proper lay opinion testimony. *See* CRE 701–702.

¶ 34 Third, although CRE 701 permits lay witnesses to present opinions "rationally based on the perception of the witness," and although section 16–8–109 expressly allows lay witnesses to give their opinions or conclusions concerning a defendant's mental condition, here, the lay witnesses were not going to offer any opinion testimony. Accordingly, CRE 701 and the portion of section 16–8–109 on which Lane relies are inapposite. Even if these provisions were applicable, however, lay opinion testimony, like all other evidence, is subject to CRE 403, and for the reasons set forth above, we cannot say that the trial court abused its discretion in excluding the lay witness evidence at issue.

### IV.   Cross–Examination of D.B.

¶ 35 Lane contends that the trial court erred in limiting the cross-examination of D.B., a prosecution witness who worked at the bar where Lane and the victim met the night of the crime. We are not persuaded.

### A.   Standard of Review and Applicable Law

¶ 36 Although a criminal defendant has the right to effective cross-examination of witnesses against him or her, this right is not unlimited. *See People v. Jaramillo,* 183 P.3d 665, 669 (Colo.App.2008). The trial court controls the scope and duration of cross-examination, subject to well-established rules, and the court must exercise its discretion to preclude inquiries that have no probative value, are irrelevant, or are prejudicial. *Id.; see also People v. Sweeney,* 78 P.3d 1133, 1136 (Colo.App.2003) ("Whether to allow an inquiry into specific instances of prior conduct is within the discretion of the trial court."). Absent a showing of an abuse of discretion, the trial court's rulings concerning whether to allow inquiry into specific instances of prior conduct will not be disturbed on review. *Sweeney,* 78 P.3d at 1136.

¶ 37 CRE 608(b) allows a party, at the court's discretion, to impeach a witness's credibility by inquiring into specific instances of his or her past conduct. In addition, section 13–90–101, C.R.S.2013, allows a party to inquire into a witness's prior felony convictions, and such evidence may be elicited either through the witness on cross-examination or through other witnesses' testimony. This inquiry, however, is typically limited to the name of the offense and a brief recital of the circumstances. *People v. Clark,* 214 P.3d 531, 539 (Colo.App.2009), *aff'd,* 232 P.3d 1287 (Colo.2010).

### B.   Discussion

¶ 38 Here, during his cross-examination of D.B., defense counsel asked D.B. about a prior conviction for felony theft:

Q  You have a felony conviction out of Jefferson County, don't you?

A Yes, I do. And I was quite honest about that when the officer came to my house to talk to me about it.

Q Oh, you were? Let's talk to the jury a little bit about how honest you were with the officers in that case. You've been a felon since back in 1997, right?

A Yes.

Q And that's because you pled guilty in this felony case we've been talking about?

A Fraud and forgery, yes.

Q That was a Class 4 felony, theft, right?

A Yes.

Q And when you pled guilty, you admitted that you were taking more than 400, but less than 15,000, right?

A Yes.

Q And that was from your employer at the time, right?

A Yes, it was.

Q And when you pled guilty, part of the charge that you admitted to was that you had taken the money from them using deception, right?

A Yes.

Q And when the money initially went missing, your employer, the division security manager, came to you to talk to you about it, right?

A Right.

Q And you told him that you hadn't done anything, right?

A Yeah.

¶ 39 Defense counsel then sought to elicit, among other things, the facts that D.B. had committed the theft by forging ninety receipts and that she falsified a urine test while in community corrections. The prosecution objected to such further testimony, and the court sustained the objection, finding the testimony to be inadmissible under CRE 403, among other grounds. We perceive no abuse of discretion in this ruling.

¶ 40 As noted above, by the time the prosecution objected, defense counsel had already elicited that D.B. (1) had a felony conviction for theft; (2) stole between $400 and $15,000 from her employer; (3) used deception as part of the theft; and (4) lied to her employer about her conduct. Additionally, defense counsel had elicited testimony earlier in which D.B. admitted that she was "against Mr. Lane" and "was with the other side."

¶ 41 Accordingly, the record shows that the jury had ample information about D.B.'s felony conviction and background to assess her credibility. In these circumstances, we cannot say that the trial court abused its discretion in excluding the further details at issue. *See* CRE 403; *Jaramillo*, 183 P.3d at 669.

## V. Restitution

¶ 42 Finally, Lane contends that the trial court erred, under section 18–1.3–602(4)(a), C.R.S.2013, in awarding restitution for all three of the victim's siblings' travel expenses to attend the trial. Specifically, he reads the statute to allow an award of such expenses for only one sibling. (Lane does not challenge the trial court's finding that his conduct caused the siblings to incur the travel expenses at issue; accordingly, we do not address, and we express no opinion on, the issue of causation here.) We disagree with Lane's construction of the statute.

¶ 43 Statutory interpretation presents a question of law that we review de novo. *Dubois v. People*, 211 P.3d 41, 43 (Colo.2009).

¶ 44 Restitution means "any pecuniary loss suffered by a victim ... [that is] proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18–1.3–602(3)(a), C.R.S.2013. Section 18–1.3–602(4)(a), in turn, provides, in pertinent part:

"Victim" means any person aggrieved by the conduct of an offender and *includes but is not limited to the following*

(I) Any person against whom any felony ... offense has been perpetrated or attempted;

. . . .

(V) If any person described in subparagraph (I) ... of this paragraph (a) is deceased or incapacitated, the person's spouse, parent, legal guardian, natural or adopted child, child living with the victim,

sibling, grandparent, significant other ... or other lawful representative. . . .

(Emphasis added.)

¶ 45 Here, Lane argues that when a victim is deceased, a defendant may owe restitution to a "lawful representative" of the victim, including the victim's "sibling," and that this plain language precludes an award of restitution to multiple siblings. We are not persuaded.

¶ 46 In interpreting statutes, we read the singular to include the plural and the plural to include the singular. § 2–4–102, C.R.S. 2013. Thus, even though the restitution statute refers to "the [deceased] person's ... sibling," we read "sibling" to include "siblings." Moreover, the statute defines a victim as "any person aggrieved by the conduct of an offender," and this definition is followed by a nonexclusive list of potential victims. See § 18–1.3–602(4)(a). The victim's siblings were indisputably "aggrieved" by Lane's conduct and, thus, fall within the expansive definition of "victim" in the statute.

¶ 47 Accordingly, we conclude that the trial court did not err in awarding restitution to all three of the victim's siblings.

VI.   Conclusion

¶ 48 For these reasons, the judgment and order are affirmed.

Loeb, C.J., and Kapelke *, J., concur