22CA1800 Peo v Knudtson 08-07-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1800
Weld County District Court No. 20CR1252
Honorable Marcelo A. Kopcow, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jason Phillip Knudtson,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE TOW
Yun and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

Philip J. Weiser, Attorney General, Jacey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John Plimpton, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Jason Phillip Knudtson, appeals the judgment of conviction entered on a jury verdict finding him guilty of three counts of sexual assault on a child by one in a position of trust (SAOC-POT) and one count of aggravated incest. We affirm the judgment in part and vacate it in part, and we remand the case with directions.

## I.    Background

¶ 2     At trial, the jury heard evidence that would support the following findings.

¶ 3     In 2015, Knudtson's stepson, T.K., filed a police report alleging that Knudtson sexually abused him regularly from the age of seven to nineteen. Detective Doug Slocum led the investigation into T.K.'s allegations. After concluding his initial investigation, Detective Slocum submitted his report to his supervisor. Detective Slocum's supervisor did not forward the report to the District Attorney's Office (DA's office), however, and T.K.'s claim remained dormant for approximately five years. In 2020, T.K. followed up with the DA's office to find out why his case had not been pursued. The DA's office discovered that it never received T.K.'s case file and contacted the police department to request the relevant report.

¶ 4     After reviewing Detective Slocum's report, the prosecution charged Knudtson with five counts of SAOC-POT (counts one through five), one count of aggravated incest, and one count of sexual exploitation of a child.  Counts one and two encompassed any instances of sexual abuse that occurred within specific date ranges.[1]  Count one also included a sentence enhancer alleging that T.K. was "a person with less than fifteen years of age during the time period charged for this offense."

¶ 5     Counts three, four, and five introduced specific acts to support each charged count.  Count three addressed an incident during which Knudtson allegedly assaulted T.K. in his bedroom under the pretense of rubbing T.K.'s injured back when T.K. was ten years old (the backrub incident).  Count four addressed an incident during which Knudtson allegedly assaulted T.K. in their family home after visiting the pool when T.K. was fifteen years old (the post-swimming incident).  And count five addressed an incident during which

---

[1] The date ranges for counts one and two overlapped as charged. Count one encompassed any sexual abuse that T.K. was subject to from the age of seven to fourteen.  Count two encompassed any sexual abuse that T.K. was subject to from the age of seven to seventeen.

Knudtson allegedly assaulted T.K. in the shower at their family home when T.K. was between fourteen and sixteen years old (the shower incident).

¶ 6     Each SAOC-POT charge included a sentence enhancer interrogatory instructing the jury to determine whether Knudtson committed the assault as part of a pattern of sexual abuse. The jury was instructed that a pattern of sexual abuse existed if the prosecution proved beyond a reasonable doubt "the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim."

¶ 7     Following a jury trial, Knudtson was found guilty of SAOC-POT on counts one, two, and three but acquitted on counts four and five. The jury found that T.K. was under the age of fifteen during the date range charged in count one. But the jury did not find that Knudtson committed the assault as part of a pattern of sexual abuse on any of the counts. The jury also found Knudtson guilty of aggravated incest but acquitted on the charge for sexual exploitation of a child. The court sentenced Knudtson to four indeterminate terms of eight years to life in the custody of the Department of Corrections, to be served concurrently and to be

followed by an additional mandatory parole period of twenty years to life.

## II. Proposed Witness Testimony

¶ 8 Knudtson argues the trial court erred when it precluded defense counsel from calling a witness to present testimony intended to rebut and impeach Detective Slocum. We disagree.

## A. Additional Background

¶ 9 On the first day of the trial, the prosecution requested that the court preclude any inquiry into the "mental processes and decision making processes of the . . . [p]olice [d]epartment, and/or the DA's office." The prosecutor clarified his position by stating that "it [is] not admissible whether the DA's office thought a case was fileable or not, or whether a particular detective thought the case was fileable or not." Defense counsel countered that "it [was] a reasonable inference that when the case filing went up the line from Detective Slocum to his superiors, that they made a decision that it was not a sufficiently proven case to be turned over to the DA's office," and that "an explanation is due . . . for the five-year gap." The court concluded that the opinions of law enforcement and the DA's office concerning "whether they thought this was a strong case

or not, or whether charges should be filed or not, is not relevant to this jury's determination as to whether the prosecutor can prove all of the evidence beyond a reasonable doubt." The court permitted counsel to inquire about the lack of investigation from 2015 to 2020 as long as it did not touch on the opinions of law enforcement and the DA's office.

¶ 10 During opening statements, the prosecution addressed the five-year gap, explaining that when T.K. initially reported the assault in 2015, he "was told . . . [Detective Slocum would] send [the report] up the line, and . . . [his supervisors would] look at it for possible filing of charges with the DA's [o]ffice." On direct, T.K. testified that after reporting the alleged assault to the police department, he "was under the impression that they were going to be sending this information over to the District Attorney's office."

¶ 11 On direct examination, Detective Slocum testified that upon completing his investigation, he submitted the report to his supervisor and indicated in it that "he wish[ed for] this report to be now forwarded to the District Attorney's office for review and a filing decision." Detective Slocum explained that, normally, "once [the report] reaches a supervisor, they approve the report [a]nd they

would forward the entire investigation to the District Attorney's Office." Detective Slocum testified that he expected to hear back from the DA's office about whether charges would be filed, but never did, and that he did not follow up on T.K.'s case until the DA's office reached out in 2020. A review of the police department's record management system showed there were no other logs on the case apart from Detective Slocum's submission to his supervisor five years earlier.

¶ 12 On cross-examination, defense counsel asked Detective Slocum whether he told T.K.'s former counsel, Brian Bagley, "that [he was] not going to file the case." Detective Slocum denied this and asserted that he told Bagley he would refer it to the DA's office. Defense counsel requested that they be allowed to call Bagley as an unendorsed witness to testify that Detective Slocum told him that he would not be filing the case. The prosecution objected on the grounds that the proposed testimony was inadmissible because it went to the issue of law enforcement's thought processes, which the court had already deemed irrelevant. The prosecution additionally argued that defense counsel raised this issue and that Bagley

should have been endorsed as a witness if that was counsel's intended strategy.

¶ 13    The court denied defense counsel's request to call Bagley. The court explained that Bagley's lack of endorsement as a witness created a procedural issue. The court also noted that Bagley's proposed testimony was irrelevant under CRE 401 because "the officer's lay opinion as to why he believes a case should or should not have been filed asserts the role of the jury . . . [, and] it is irrelevant whether the officer believed there was enough evidence." Finally, the court concluded that the testimony was also excludable under CRE 403 because "the probative value of that information is . . . substantially outweighed by the unfair prejudice."[2]

### B.    CRE 401 and CRE 403

¶ 14    Knudtson contends the trial court abused its discretion by concluding that Bagley's proffered testimony was irrelevant, and

---

[2] In its oral findings, the trial court stated that it "find[s] that the probative value of that information is *not* substantially outweighed by the unfair prejudice." As Knudtson acknowledges in his opening brief, context makes clear that the court unintentionally included the word "not," given the court's *denial* of defense counsel's request and its citation to CRE 403, which allows the court to exclude relevant evidence "if its probative value is substantially outweighed by . . . unfair prejudice."

therefore inadmissible, despite the prosecution's "opening of the door" to the matter. Additionally, Knudtson argues that the trial court abused its discretion by finding that Bagley's testimony would be more prejudicial than probative.

### 1. Standard of Review and Applicable Law

¶ 15 "We review a trial court's determination regarding the admissibility of evidence for an abuse of discretion." *People v. Lane*, 2014 COA 48, ¶ 21. "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair." *Id.*

¶ 16 Only relevant evidence is admissible. CRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. And relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. Trial courts are given considerable discretion in determining whether the probative value of evidence outweighs its prejudicial effect. *People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002).

¶ 17    "A party may open the door to otherwise inadmissible evidence by presenting incomplete evidence on a subject." *People v. Heredia-Cobos*, 2017 COA 130, ¶ 20.  "The concept of 'opening the door' represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression." *Id.* (quoting *People v. Murphy*, 919 P.2d 191, 195 (Colo. 1996)).  But the concept is not unlimited.  *People v. Cohen*, 2019 COA 38, ¶ 23.  Once a party opens the door, the opponent may inquire into the "otherwise inadmissible rebuttal evidence '. . . only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.'"  *Id.* (quoting *United States v. Martinez*, 988 F.2d 685, 702 (7th Cir. 1993)).

## 2.    Analysis

¶ 18    Knudtson does not appear to argue that evidence of Detective Slocum's intent to file charges (or lack thereof) was relevant in and of itself.  Nor can he.  It is well established that a police officer's belief regarding whether there is probable cause to arrest or charge a defendant is not relevant to whether the prosecution has carried

9

its burden of proof.[3]  *See Howard-Walker v. People*, 2019 CO 69, ¶¶ 33, 42.

¶ 19    Instead, Knudtson contends the trial court abused its discretion because the prosecution opened the door to the issues implicated in Bagley's proposed testimony.  Specifically, Knudtson contends the prosecution opened the door to Bagley's testimony when (1) the prosecutor "suggest[ed] in [his] opening statement that Detective Slocum had intended to seek charges against Knudtson in 2015"; (2) "T.K.'s direct-examination testimony suggest[ed] that police told him the case would be forwarded to the District Attorney's office"; and (3) Detective Slocum testified that "he tried to have the case forwarded to the District Attorney's office for a filing decision."  Knudtson argues that these statements made Bagley's testimony relevant because it could be used to rebut and impeach Detective Slocum's testimony and generally impeach his credibility,

---

[3] This rule is more often invoked by defendants objecting to "screening" testimony.  *See People v. Mendenhall*, 2015 COA 107M, ¶ 62 ("When probable cause to charge a defendant is not at issue . . . the prosecution's presentation of evidence about charging decisions may imply that, because of a pretrial screening process, only guilty parties are charged with crimes and thus the defendant must be guilty.").  Nevertheless, there is no reason it would not apply equally to a belief in the *lack* of a case's strength.

10

and it would cast doubt on the suggestion that police told T.K. that his case would be forwarded to the DA's office.

¶ 20      We disagree that the identified statements opened the door to Bagley's testimony. The prosecution's opening statement did not suggest that Detective Slocum "intended to seek charges." Instead, the prosecution explained that the "ball got dropped" by the police department after T.K. left the station with the understanding that the report would be "sent up the line for the *possible* filing of charges." (Emphasis added.) This information fell within what the court deemed relevant — namely, an explanation for the five-year gap between the initial report and subsequent charges. Furthermore, Detective Slocum later clarified that he had no control over whether charges were filed, as that decision ultimately rests with the DA's office.

¶ 21      T.K.'s testimony that he was informed that the report would be sent up the chain similarly did not touch on the officer's belief, or disbelief, in T.K.'s allegations. It simply reflected T.K.'s understanding that the next step in the process would involve the DA's office considering pressing charges against Knudtson.

¶ 22    And Detective Slocum's testimony that he tried to have the case forwarded did not provide insight into his own beliefs regarding the merits of the case.  In fact, in the same line of questioning, Detective Slocum acknowledged that "sending it up the line" and "indicating that it should be forwarded to the District Attorney's office for review and a filing decision" was a standard practice at the police department.

¶ 23    In sum, all the statements that Knudtson contends opened the door simply addressed the five-year gap and general practices of the police department.  None of them touched on the mental processes of the officers.

¶ 24    Conversely, defense counsel acknowledged that Bagley's proffered testimony would have "announced that [Detective Slocum stated] that he was not filing the case."  This is precisely the kind of irrelevant screening testimony that trial courts have repeatedly been instructed to preclude.  *See People v. Mendenhall*, 2015 COA 107M, ¶ 62.  Bagley's proposed testimony was offered to prove that Detective Slocum did not believe T.K.'s case should be filed, which the court correctly concluded was irrelevant to the "jury's

determination as to whether the prosecutor can prove all of the evidence beyond a reasonable doubt."

¶ 25 And while Knudtson argues that Detective Slocum's claim that he tried to have the case forwarded "implied that he believed T.K.'s allegations were sufficiently credible for charges," as previously noted, Detective Slocum explained that the DA's office, not the police department, had the authority to pursue charges.

¶ 26 Finally, we acknowledge that generally, where a witness has made a previous statement inconsistent with his testimony at trial, the inconsistency may be shown by competent evidence and used to impeach the witness. § 16-10-201, C.R.S. 2024. But even if Detective Slocum had told Bagley he did not intend to file the case, any impeachment based on this statement would go *solely* to Detective Slocum's credibility as to his belief in the strength of the case, which — as we have noted — has absolutely no relevance. Thus, we also reject Knudtson's argument that the trial court abused its discretion in finding Bagley's testimony was more prejudicial than probative.

¶ 27 In sum, the trial court's decision to reject Bagley's testimony was not manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 28    Given our conclusion that the trial court did not abuse its

discretion in denying Bagley's testimony under CRE 401 and CRE

403, we need not address whether calling Bagley as an unendorsed

witness required endorsement, or in the alternative, whether the

court was required to consider the *Pronovost* factors in precluding

defense counsel from calling him.  *See People v. Pronovost*, 773 P.2d

555, 558 (Colo. 1989).

## III.    Merger

¶ 29    Knudtson next raises an unpreserved argument that double

jeopardy requires the merger of his three convictions for SAOC-POT

into one.  We agree that two of the SAOC-POT convictions must be

vacated.

### A.    Standard of Review and Applicable Law

¶ 30    We review de novo whether merger of multiple criminal

offenses is required.  *Whiteaker v. People*, 2024 CO 25, ¶ 9.  The

principle of double jeopardy in the United States and Colorado

Constitutions protects individuals from multiple punishments for

the same offense absent express statutory authorization.  *Woellhaf

v. People*, 105 P.3d 209, 214 (Colo. 2005); U.S. Const. amends. V,

XIV; Colo. Const. art. II, § 18.  Merger is the remedy for

14

multiplicitous punishments entered in violation of double jeopardy principles.  *Whiteaker*, ¶ 24.

¶ 31     Where prosecution involves distinct offenses premised upon violation of the same statute, we must ask "(1) whether the unit of prosecution prescribed by the legislature permits the charging of multiple offenses; and (2) whether the evidence in support of each offense justifies the charging of distinct offenses."  *Quintano v. People*, 105 P.3d 585, 590 (Colo. 2005).

¶ 32     In addressing the first prong, "[t]he General Assembly has defined . . . the unit of prosecution [for SAOC as] 'any sexual contact.'"  *Woellhaf*, 105 P.3d at 216.  Sexual contact means "[t]he knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim."  § 18-3-401(4)(a), C.R.S. 2024.  Thus, in punishing SAOC, "the legislature only authorized a single punishment for all discrete acts of touching that occur within a single incident."  *Quintano*, 105 P.3d at 590.

¶ 33     For the second prong, "we look to all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses."  *Id.* at 592.

## B. Analysis

¶ 34    Knudtson contends his convictions on counts one, two, and three were not based on factually distinct offenses because each conviction was predicated on a single incident — namely, the backrub incident addressed in count three. In support of this conclusion, Knudtson points out that "the charged timeframe for count three was fully included in the charged timeframes for counts one and two," meaning that verdict forms permitted a finding of guilt on all three counts if the jury found the backrub incident took place. And more compelling is Knudtson's recognition of the fact that "the jury acquitted Knudtson of the specific SAOC-POT incidents charged in counts four and five, and it rejected the pattern of abuse enhancer for counts one, two, and three."

¶ 35    The People counter that "there was ample discrete evidence the jury could have relied on in finding each charge proven beyond a reasonable doubt." They contend that the inconsistency between the verdicts and the interrogatories evidences a jury compromise, which is not error. The People also argue that "[a]bsent evidence to the contrary, we presume the jury understood and followed the court's instructions." *Washington v. People*, 2024 CO 26, ¶ 31. The

16

trouble is, the People ignore what the jury was instructed — and what it was not.

¶ 36    During the instruction phase, the jurors were told that, in order to convict Knudtson of SAOC-POT, they "must either unanimously agree that the defendant committed the same act or acts, or that the defendant committed all of the acts described." Such a unanimity instruction is required when the prosecution chooses not to elect specific acts in a given charge. *Thomas v. People*, 803 P.2d 144, 152 (Colo. 1990). But notably — and fatally to the People's position on appeal — the jury verdict forms for counts one and two did not repeat the instruction and did not ask the jury to either note which act or acts it found were committed or state that it unanimously found that *all* of the acts described by T.K. were committed. Thus, if the verdict forms for counts one and two were, as the People now argue, intended to encompass the more generalized description of abuse over the years, the verdicts would necessarily fail for lack of unanimity.

¶ 37    Instead, the jury was instructed to decide *for each offense* whether Knudtson committed the sexual assault as part of a pattern of abuse, meaning that the prosecution proved beyond a

17

reasonable doubt "the commission of two or more incidents of sexual contact" committed by Knudtson on T.K. In rejecting this sentence enhancer, the jury necessarily found that the prosecution proved one — and only one — incident of sexual assault. And given that the jury acquitted Knudtson of counts four and five, which involved the post-swimming incident and the shower incident, the only incident of sexual assault on which the jury's conviction could have been based is the backrub incident reflected in count three. It follows that because count three fell within the time range specified by counts one and two, the jury's conviction on all three counts was based solely on the backrub incident and nothing else.

¶ 38     We agree with Knudtson that the interrogatories are not inconsistent with the verdicts; rather, they are consistent "if, and only if, each SAOC guilty verdict was based on the same act" — the backrub incident. Presuming the jury followed the instructions, *see Washington,* ¶ 31, we must infer that the jury could only unanimously agree on one of the incidents of abuse T.K. described: that the backrub incident occurred; that T.K. was ten at the time; and thus this incident supported a verdict of guilty on each of the first three counts.

¶ 39   Because the jury found Knudtson guilty of a single act of sexual contact — and thus a single unit of prosecution — he can only stand convicted of a single offense.  *See Whiteaker*, ¶ 24.

## IV.   Disposition

¶ 40   We vacate Knudtson's convictions and sentences for counts two and three of the SAOC-POT charges[4] and remand to the trial court with directions to merge these offenses with count one and to correct the mittimus accordingly.  In all other respects, the judgment is affirmed.

JUDGE YUN and JUDGE GRAHAM concur.

---

[4] We agree with Knudtson and the People that the merger of counts two and three into count one, which included a sentence enhancer for sexual contact with a child under fifteen, is the proper remedy to give the maximum effect to the jury's verdict.  *See Halaseh v. People*, 2020 CO 35M, ¶ 10.