24CA0714 Peo v Albat 04-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0714
Arapahoe County District Court No. 09CR1113
Honorable Eric White, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Corey Ray Albat,

Defendant-Appellant.

---

ORDER AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Dunn and Welling, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

---

Philip J. Weiser, Attorney General, Alejandro Sorg Gonzalez, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Gail K. Johnson, Alternate Defense Counsel, Boulder, Colorado, for Defendant-Appellant

¶ 1     Defendant, Corey Ray Albat, appeals the postconviction court's denial of his Crim. P. 35(c) motion for postconviction relief. We affirm.

## I.     Background

### A.     Trial

¶ 2     Albat was charged and convicted of first degree murder after he shot and killed K.L. in 2009. His primary theory of defense at trial was self-defense, even though his counsel initially endorsed eight possible theories of defense including voluntary intoxication.

¶ 3     The following evidence was presented at trial. Albat and K.L. met in K.L.'s car to discuss the money that Albat owed him. Albat told K.L. that he didn't have the money but would try to get it. As Albat was leaving the car, K.L. warned him that he was armed and told Albat not to return armed. When Albat returned to the car, he shot and killed K.L. Albat was arrested the next day in Kansas.

¶ 4     The police videotaped an interview with Albat that was introduced at trial. In it, Albat admitted he smoked marijuana and drank whiskey with K.L. the day of the shooting but denied seeing him later in the evening. When officers confronted Albat with more

evidence, he admitted shooting K.L. but stated he did so in self-defense and denied being belligerently drunk.

¶ 5     Nonetheless, circumstantial evidence presented at trial suggested Albat was intoxicated at the time of the shooting.  This included testimony from a passenger in K.L.'s car that night who testified that Albat had slurred and mumbled speech to the point that the passenger could only make out a quarter of what Albat was saying.  The passenger also testified that Albat was "obviously on something and acting strange."  It also included testimony from Albat's mother that, on the day of the shooting, she dispensed Albat his prescribed medications.  Those medications included Oxycontin, prescribed for a spinal cord injury and traumatic brain injury that Albat suffered as the result of a car accident, and Xanax, prescribed for anxiety.  She further testified that she saw him take a drink directly out of a bottle of Crown Royal whiskey, along with K.L., and assumed Albat had been drinking all day.  On cross-examination, though, Albat's mother acknowledged that she had limited interactions with Albat that day, that she was also intoxicated, and that she had given Albat his prescribed dose of Oxycontin and Xanax.

¶ 6    The trial court instructed the jury on both self-defense and voluntary intoxication, and it also explained that voluntary intoxication negated only the culpable mental state for first degree murder after deliberation. The trial court also instructed the jury on the lesser included offenses of second degree murder, reckless manslaughter, and negligent homicide.

¶ 7    The jury convicted Albat of first degree murder after deliberation.

### B.    Appeal and Postconviction Proceedings

¶ 8    A division of this court affirmed Albat's conviction on direct appeal. *People v. Albat,* (Colo. App. No. 10CA1642, Oct. 3, 2013 (not published pursuant to C.A.R. 35(f)).

¶ 9    Albat then filed a motion for postconviction relief alleging trial errors and ineffective assistance of counsel. The postconviction court denied the motion without a hearing. A division of this court reversed and remanded to the postconviction court to hold an evidentiary hearing on only the ineffective assistance of counsel claim. *People v. Albat,* (Colo. App. No. 20CA0070, Oct. 20, 2022 (not published pursuant to C.A.R. 35(e)).

3

¶ 10    One of Albat's trial counsel testified at the postconviction hearing about the defense's trial strategy and the process undertaken to reach that decision. Specifically, Albat's counsel testified that the defense team was aware of the likelihood of Albat's intoxication at the time of the shooting and that they were aware of the brain and spinal cord injuries Albat suffered before the shooting. An investigator for the defense team pulled records regarding Albat's prescriptions, and the defense team knew that discovery contained information about Albat's "ingestion and his habits" and also that "interviews of family members . . . suggested an addiction to pills and things of that nature."

¶ 11    After looking "at all avenues" of defense, including intoxication, Albat's trial counsel testified that the defense team determined self-defense was the best strategy to pursue based on (1) the totality of the evidence; (2) Albat's statement to police that he acted in self-defense; and (3) general trial strategy to obtain a full acquittal.

¶ 12    Trial counsel acknowledged that it was not "a perfect self-defense case by any stretch" but explained that they factored in that they could not prove that Albat was intoxicated except through

4

circumstantial evidence and hearsay, or otherwise Albat's testimony.

¶ 13    In the end, trial counsel explained the decision to pursue self-defense this way:

> We wanted [Albat] to appear to have acted reasonably, to have acted rationally in his decision to pull the trigger and act in self-defense.  If we would have started going down the road of the intoxication, we felt like it would have undercut our arguments for self-defense, because on the one hand, we're arguing that he acted reasonably, that he was rational, that he, you know, observed things rationally and did what a reasonable person would have done in his position.  The problem [with] then going into intoxication is you negate his reasonableness to a large extent. . . .  And we did make a decision to downplay the levels of intoxication in our trial . . . .  We wanted to get a full acquittal based on self-defense.

¶ 14    Conversely, Albat's postconviction counsel called four scientific experts and a criminal defense expert who testified in support of a voluntary intoxication defense as follows:

- Dr. Selma Eikelenboom, a pharmacogeneticist, testified that Albat's genetic makeup slows the metabolism and processing of controlled substances in his body.  She opined that in Albat's case this creates toxicity and brain

5

dysfunction that causes reflexive actions. She further opined that, despite the lack of evidence establishing Albat's level of intoxication on the night of the shooting, it was "highly likely" Albat was unable to "come up with a decision that [wa]s based in reality or moral sense." More specifically, Dr. Eikelenboom testified it was her opinion that, at the time of the shooting, Albat was unable to form the intent to kill or to otherwise deliberate on the killing as a result of being intoxicated.

- Dr. John Dicke, a psychologist, testified that he diagnosed Albat in 2018 with post-traumatic stress disorder (PTSD) resulting in anxiety and depression, for which Albat was self-medicating with prescribed substances and marijuana. Dr. Dicke opined that Albat could not have premeditated or deliberated on committing the charged offense of first degree murder.

- Dr. Raymond Singer, an expert in neuropsychology and neurotoxicity, opined that Albat was "delusional" at the time of the offense as a result of the "severe" brain damage related to his traumatic brain injury. Dr. Singer

6

further testified that the alcohol and drugs Albat took can exacerbate the risk of violence in someone with a traumatic brain injury.

- Dr. Andrew Ewens, an expert in toxicology, estimated from the information available at the time of trial, that the amount of alcohol and prescribed drugs Albat had used meant that Albat "did not have the intent to shoot and the ability to come up with this decision premeditated."

- Margaret Baker, an experienced criminal defense attorney who was admitted as an expert in the area of ineffective assistance of counsel, opined that trial counsel had not completed a reasonable investigation into the voluntary intoxication defense.

¶ 15  After the postconviction hearing, the postconviction court again denied Albat's motion.  Albat now appeals.

## II.  Analysis

¶ 16  Albat contends that the postconviction court erred by denying his postconviction motion because trial counsel provided ineffective assistance of counsel by failing to investigate and pursue an

7

intoxication defense. He also argues that there is a reasonable probability that, but for counsel's alleged deficient performance, the result of his trial would have been different. We consider and reject each contention in turn.

## A. Relevant Law

¶ 17 To prevail on an ineffective assistance of counsel claim, a defendant must prove that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶ 18 "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Whether counsel rendered ineffective assistance is a mixed question of law and fact. *Id.* at 698. We defer to the postconviction court's factual findings if they are supported by the record but review its legal conclusions de novo. *Dunlap v. People*, 173 P.3d 1054, 1063 (Colo. 2007).

## B.    Discussion

### 1.    Trial Counsel's Performance Was Not Deficient

¶ 19    The postconviction court took evidence over three days and later entered a written order.  There, it made the following findings of fact:

> [The] Court of Appeals Mandate highlighted the lack of a record about whether trial counsel had investigated an intoxication defense, chose not to raise the defense (and why), even considered intoxication as a possible defense, and why defense counsel did not request jury instructions on intoxication.
>
> To answer those questions, the [c]ourt turns to the testimony of trial counsel.  He testified credibly that he had obtained, through investigation, certain records regarding [Albat]'s medications, and he was aware [Albat's] mother said she saw [Albat] with a bottle of alcohol on the day of the incident. But counsel had no scientific proof or tests confirming [Albat]'s intoxication at the time of the shooting.  Nonetheless, he thought there was a likelihood that [Albat] was intoxicated at the time.  But in an interview with law enforcement after being arrested, [Albat] admitted to shooting the victim, saying that he acted in self-defense after fearing he would be shot by the victim . . . . [Albat's defense team] made a strategic decision not to present an intoxication defense because self-defense was a strong but imperfect option that offered a complete affirmative defense to the charge,

9

rather than just an element negating offense. Thus, he believed that an intoxication defense would work against self-defense.

¶ 20    For the reasons that follow, we agree with the postconviction court's determination that trial counsels' decision to forgo an intoxication defense without further investigation, and instead pursue self-defense as the primary trial strategy, was within the "wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689.

¶ 21    First, the postconviction court's identification of the conundrum counsel faced is supported by the record and case law. Had counsel presented both a full-fledged self-defense theory and a voluntary intoxication theory, the defense would have risked arguing conflicting theories and causing distrust or confusion among the jurors.  This is because the use of deadly force in self-defense required that Albat "reasonably" believed K.L. was using or was about to use unlawful physical force upon him; that Albat "reasonably" believed a lesser degree of force was inadequate; and that Albat had a "reasonable" ground to believe that he was in danger of being killed or receiving great bodily injury.  § 18-1-704(1)-(2)(a), C.R.S. 2025.

¶ 22     In construing this "reasonable person standard," divisions of this court have agreed with one of the most-recognized authorities in criminal law, Wayne R. LaFave, who writes: "At least where [a defendant's] intoxication is voluntary, [a defendant] does not have the defense of self[-]defense, which requires that the defendant appraise the situation as would a reasonable *sober* man."  2 Wayne R. LaFave, *Substantive Criminal Law* § 9.5(d), Westlaw (3d ed. database updated Oct. 2025); *see People v. Vasquez*, 148 P. 3d 326, 330 (Colo. App. 2006); *People v. Lane*, 2014 COA 48, ¶¶ 2-10. Therefore, it would have been inconsistent for counsel to have asserted, on the one hand, that Albat acted reasonably in self-defense as he stated in his interrogation but, on the other hand, that Albat could not have been held responsible for the crime of first degree murder with deliberation due to his level of intoxication. Accordingly, we discern counsel's determination to pick one defense over the other was grounded in sound strategy.

¶ 23     Second, considering the dearth of definitive, nonspeculative evidence of Albat's intoxication at the time of trial, trial counsel's decision to not further pursue investigation into a voluntary intoxication defense was a reasonable professional judgment to

11

focus their defense on the evidence they did have. Indeed, trial counsel testified that they did look into Albat's intoxication but that no definitive, scientific proof of Albat's level of intoxication existed at the time of trial, and none of the scientific experts Albat proffered at the postconviction evidentiary hearing could have definitively stated Albat's level of intoxication when the crime occurred. And, while trial counsel testified that they could have made a compelling circumstantial case for Albat's intoxication, that strategy would have had the added cost of potentially having to (1) call Albat to testify, thereby exposing him to impeachment based on his statements to police during interrogation and potentially opening the door to other problematic evidence; and (2) damaging trial counsel's credibility to present Albat as a person who reasonably acted in self-defense. Under these circumstances, "[c]ounsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter*, 562 U.S. 86, 107 (2011); *see also People v. Terry*, 2019 COA 9, ¶ 28 (concluding that defense counsel's failure to pursue a voluntary intoxication defense was not deficient in part because the evidence establishing the level of the

12

defendant's impairment was inconclusive and, even if the defendant had found an expert to testify he was as intoxicated as he claimed, it still may not have persuaded the jury that he was incapable of forming the requisite mens rea), *overruled on other grounds by People v. Segura*, 2024 CO 70, ¶ 38.

¶ 24 Next, we perceive trial counsel's decision to pursue self-defense over intoxication as a sound strategy because asserting voluntary intoxication would have led to Albat's possible exoneration from only first degree murder, as that was the only specific intent crime charged, whereas self-defense could have led to a full acquittal. *See Terry*, ¶ 28 (concluding that trial counsel's decision not to pursue a voluntary intoxication defense was "strategically sound" in part because the defense applied to only the specific intent crime charges and not the others).

¶ 25 Accordingly, although trial counsel admitted that the self-defense strategy was imperfect in this case, voluntary intoxication, as we have established, was also an imperfect defense that conflicted with the theory of self-defense. Because "[t]here are countless ways to provide effective assistance" such that "[e]ven the best criminal defense attorneys would not defend a particular client

in the same way," we can't say, with the benefit of hindsight, that counsel's representation was constitutionally deficient. *Strickland*, 466 U.S. at 689.

¶ 26    Our conclusion does not change because some evidence of Albat's intoxication was raised at trial and the jury was instructed on voluntary intoxication. Contrary to Albat's assertions on appeal, trial counsel testified that they were aware of Albat's intoxication but that counsel's strategy was to "downplay" his intoxication to establish the reasonableness of his self-defense. As described above, we consider this strategy far from the "gross incompetence" required to establish deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

¶ 27    For all these reasons, we agree with the postconviction court that trial counsel's decision to not further investigate or pursue a voluntary intoxication defense was grounded in reasonable trial strategy. *See People v. Houser*, 2020 COA 128, ¶ 36 ("*Strickland* cautioned that '[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission

of counsel was unreasonable.'" (quoting *Strickland*, 466 U.S. at 689)).

### 2. Albat Was Not Prejudiced by Trial Counsel's Failure to Further Investigate an Intoxication Defense

¶ 28 Like the postconviction court, we are also not persuaded that Albat was prejudiced because, even had trial counsel pursued further investigation, they would not have discovered additional experts or information that would have conclusively supported a viable voluntary intoxication defense. Indeed, "the mere possibility that additional investigation would have revealed useful information does not establish ineffective assistance." *People v. Pendleton*, 2015 COA 154, ¶ 34. Rather, unless the "investigation would have discovered substantial evidence which, if introduced, might reasonably have led to a different result, counsel's deficiency, if such it be, was not prejudicial." *People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994).

¶ 29 Here, the record supports the postconviction court's finding that "additional investigation would not have located any absent witnesses or any missing toxicology or scientific reports regarding [Albat]'s usage of controlled substances or alcohol on the day of the

15

homicide. Additional investigation would not have found an expert to opine about [Albat]'s genetic link to substance metabolization because the science did not then exist." Trial counsel even testified at the postconviction hearing that Albat's proffered experts at the postconviction hearing would not have changed his trial strategy because there was no definitive proof of intoxication. Thus, we conclude that Albat has failed to establish that, even had trial counsel pursued further investigation into his intoxication, there is a reasonable probability his defense at trial would have changed or produced a different result. *See id.*

## III. Disposition

¶ 30 The order is affirmed.

JUDGE DUNN and JUDGE WELLING concur.